IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

APEX MACHINE COMPANY,
a Florida corporation,

CASE NO. 06-60689

    Plaintiff,

*Jury Trial Demanded*

vs.

CIV-COHN

RITTER GMBH, a foreign
corporation,

MAGISTRATE JUDGE
SNOW

    Defendant.
_____/

## COMPLAINT

Plaintiff, APEX MACHINE COMPANY ("APEX") sues Defendant, RITTER GMBH ("RITTER"), and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for breach of contract pursuant to §672.703 and §672.708, *Florida Statutes* seeking damages in excess of $75,000.00, exclusive of interest, court costs and attorney's fees.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

4. APEX is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

5. RITTER is a corporate entity organized and existing under the laws of the Federal Republic of Germany, with its principal place of business in Schwabmunchen, Germany.

### GENERAL ALLEGATIONS

6. APEX is in the business of designing and building printing machinery.

7.     On or about December 3, 2004, APEX and RITTER entered into a contract ("Contract"), pursuant to which RITTER agreed to purchase a printing machine from APEX. *See* **Exhibit A** hereto, which is incorporated herein by reference.

8.     Pursuant to the Contract, APEX was to design and build in its Ft. Lauderdale, Florida manufacturing facility an offset printing machine for RITTER to use in the printing of caulking tubes. RITTER agreed to pay $517,990.00 for the printer, and the printer was to be picked up by RITTER in Ft. Lauderdale, Florida, United States at Plaintiff's manufacturing facility F.O.B. All payments due under the Contract were due to be paid by RITTER to APEX in Ft. Lauderdale, Florida.

9.     On or about March, 2005 APEX began the engineering and design of the printing printer. For approximately 8 months, various communications occurred between RITTER and Plaintiff with regard to the manufacturing of the printer. RITTER made various scheduled payments to APEX in Ft. Lauderdale, Florida towards the purchase price of the printer, and as of the filing the date of this Complaint, the total payments made by RITTER to APEX under the Contract equal $400,000.00.

10.    On or about October, 2005, the printer was completed. Thereafter, communications occurred with the Defendant whereby APEX requested that Defendant schedule a time to travel to the United States in order to see the printer demonstrated and arrange for shipping back to Germany. APEX forwarded a video taped demonstration of the printer to RITTER on or about October 24, 2005 along with various samples of the caulking tubes printed using the printer.

11.    Between October, 2005 and May, 2006 APEX attempted to schedule appointments with RITTER for purposes of RITTER's inspection of the printer. However, for one reason or another, the scheduling of the acceptance inspection was delayed. In fact, RITTER attempted on

several occasions during the attempted scheduling process to alter the terms of the Contract by proposing a new acceptance procedure for the printer. APEX refused to amend its contract and insisted upon RITTER's inspection and demonstration of the printer as stated in the Contract.

12. During November, 2005 to April, 2006, APEX was required to move the printer on numerous occasions so as to make room for the design and manufacturer of other printers for other customers of APEX. In fact, APEX was required to store the printer at APEX's manufacturing facility for an extended period of time causing enormous inconvenience and disruption to APEX's manufacturing of other customers' printers.[1]

13. On May 8 and 9, 2006, representatives of RITTER came from Germany to APEX's Ft. Lauderdale offices, ostensibly to conduct an inspection of the printer prior to making arrangements for delivery. During the inspection, however, it was clear that RITTER had no intention of taking delivery of the printer, but instead was attempting to build a case for the non-acceptance of the printer.

14. At the conclusion of the May 9, 2006, demonstration and despite APEX's tender of the printer to RITTER, RITTER failed to commit in any way with regard to the taking of the printer. In fact, RITTER abruptly ended the May 9, 2006, inspection without making any commitment whatsoever with regard to the remaining payments and/or shipment of the printer.

15. At this point, RITTER's continued refusal and delay in taking delivery has damaged APEX, and RITTER has breached the Contract as more specifically alleged below. Printers become

---

[1] The printer was moved on at least 2 occasions by APEX's employees due to RITTER's delays in scheduling the final demonstration and acceptance of the printer. The printer is approximately 16 feet wide, 8 feet tall and 7 feet deep. The printer is exceedingly intricate thereby complicating the continuous relocation of the printer.

3

obsolete over time as technology improves, and, therefore, RITTER's continued failure to take delivery will result in a diminishing value of the printer. It appears that RITTER has delayed for a sufficient time that it will either demand a reduced price for the equipment, or demand its money back.

16. APEX has retained the undersigned law firm, and is obligated to pay the firm a reasonable attorney's fee.

17. All conditions precedent to this action have been fulfilled, waived or otherwise excused as a result of RITTER's breaches.

## COUNT I – §672.708, *Florida Statutes*

APEX incorporates the allegations of paragraph 1 through 17 above as if fully set forth herein.

18. APEX has properly tendered delivery of the printer pursuant to the Contract.

19. RITTER has refused to take delivery of the printer. Such failure to accept constitutes a wrongful rejection of the printer.

20. Pursuant to §672.703(5), upon the failure of RITTER to accept the printer when properly tendered, APEX as seller has the right to recover damages for non-acceptance pursuant to §672.708.

21. APEX also is entitled to recover incidental damages pursuant to §672.710.

WHEREFORE, for the reasons set forth herein, APEX demands judgment against RITTER pursuant to §672.708, incidental damages pursuant to §672.710, APEX's reasonable costs and attorney's fees, and such other relief as the Court deems proper.

## COUNT II – §672.706, *Florida Statutes*

22. APEX incorporates the allegations of paragraph 1 through 17 above as if fully set

4

forth herein.

23. This claim is set forth in the alternative to Count I, in the event that APEX is able to resell the printer.

24. APEX has properly tendered delivery of the printer pursuant to the Contract.

25. RITTER has refused to take delivery of the printer. Such failure to accept constitutes a wrongful rejection of the printer.

26. Pursuant to §672.703(4), upon the failure of RITTER to accept the printer when properly tendered, APEX as seller has the right to resell the printer and recover damages as provided in §672.706.

27. APEX also is entitled to recover incidental damages pursuant to §672.710.

WHEREFORE, for the reasons set forth herein, APEX demands judgment against RITTER pursuant to §672.706, incidental damages pursuant to §672.710, APEX's reasonable costs and attorney's fees, and such other relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

APEX demands trial by jury of all issues so triable.

Dated: May 16, 2006

                                                MAY, MEACHAM & DAVELL, P.A.
                                                Attorneys for Plaintiff
                                                One Financial Plaza, Suite 2602
                                                Fort Lauderdale, FL 33394-1697
                                                (305) 763-6006 (Broward)
                                                (305) 944-8291 (Dade)

                                                BY: _____
                                                ROBERT C. MEACHAM
                                                Fla. Bar. No. 376337
                                                rmeacham@may-meacham-davell.com
                                                CHRISTOPHER D. BARBER
                                                Fla. Bar. No. 909051
                                                cbarber@may-meacham-davell.com

# EXHIBIT A

RITTER GMBH  
Kaufbeurer Strasse 55  
Schwabmunchen, D-86830  
Germany

104948

December 6, 2004  
Page 1 of 5

### C-506/C
### Tube Printing / Coating System
Quote No. 5474A

This proposal shall be to supply all necessary engineering, labor, and material to provide one standard Apex C-506/C fully automated caulk tube printing system.

The purpose of this system is to accept the customer's caulk tubes, per the samples received, and automatically feed, treat, print, UV dry, overcoat, UV dry, and exit the parts to the receiving container.

Operation of this system shall be as follows:

The parts are fed into the system's infeed conveyor in an orientated format. In the infeed station, the parts will be loaded mechanically onto 1 of 8 mandrels and secured into place utilizing a vacuum drawn through the mandrels, which are located on a horizontal ferris wheel style index table. Immediately following the loading station is a corona treatment unit where the printable area of the tube is pretreated for proper print and adhesion purposes. Following the treatment station is the print station, where up to six colors are printed 360° around the tube via the dry offset printing process. Following the print station is the No. 1 UV dryer to cure the ink on the tube prior to it being indexed into the coating station. In the coating station, a uniform thickness of clear coating is applied around the tube and on the full length prior to it being indexed into the No. 2 UV dryer, where the coating is cured. The parts will then be removed from the mandrels and continue through to the exit conveyor and to the customer's packaging line.

The approximate production rate of this system is 80 to 100 parts per minute, with the actual speed being dictated by the customer's upstream and downstream operations.

The corona treating station shall consist of the proper power supply, electrode housing and shall be strategically located to maximize treating at the desired production rate. The parts will be rotated during the idle position, thus, drawing the corona field through the tube surface thereby receiving a proper treat at the desired production rate. We assume in making this proposal that the parts are capable of receiving a dyne level of 38 to 40.

The print station shall be designed to accommodate up to six 9000 series dry offset printing heads. These heads can be strategically located to maximize color changeover and will utilize the segmented plate mounting method. These heads shall be complete with electronically controlled dance roll, continuous moving fountain, upper form roll, oscillating roll, lower transfer roll, and shall utilize the quick adjusting features for plate axial and linearly adjustments.

A standard flexographic coating head is incorporated within the clear coat station, and it is complete with the appropriate analox roll, distribution roll, and pump assembly to ensure proper thickness of the clear coat 360° around and on the full length of each tube.

Two ultraviolet drying units are integrated within the system, and each unit is independent and complete with its own power supply, lamp assembly, irradiator module, and all mounting brackets to place the lamp at the proper distance to maximize curing of the ink and clear coat. These units are shuttered and electronically controlled to operate independently or simultaneously.

## apex machine company

3000 n.e. 12th terrace · fort lauderdale, fl 33334-4497 usa  
phone: 954.566.1572 · fax: 954.563.2844 · email@apexmachine.com  
website: www.apexmachine.com

RITTER GMBH
Kaufbeurer Strasse 55
Schwabmunchen, D-86830
Germany

December 6, 2004
Page 2 of 5

C-506/C, Quote No. 5474A

We assume in making this proposal that the customer will supply sufficient quantities of tubes for proper set up and testing purposes. We further assume that these tubes to be like other tubes printed in the past, which are free and clean from any foreign matter that would impede quality handling, imprinting, and curing.

This system, as described, shall be fully integrated to operate as a single line unit utilizing all of the individual stations or individual stations can be chosen or turned off through the use of selector switches at the main control panel.

This system will be fully guarded with electrical interlocks and manufactured in accordance with the Apex interpretation of the latest OSHA and CE regulations and as per the Apex Standards.

This system shall be wired 220 volts, 3 phase, 50 cycles, with 24-volt controls. *NOT GERMANY 400V/3PH/50HZ* [handwritten]

We assume in making this proposal that the customer shall supply sufficient quantities of parts exactly as the drawings to be submitted for proper set up and testing purposes, and these parts are free and clean from any foreign matter that would impede quality handling, imprinting, and drying.

Our company has no facilities for disposal of volumes of samples regardless of the material content. We expect to return all samples at your expense via the carrier that you have designated. If no carrier has been designated, we will, at our discretion, select a carrier. Prepaying and adding the packing and shipping costs to the original contract and/or purchase order.

The payment terms for returned shipments shall be "upon presentation of invoice" regardless of the terms and conditions of the original proposal and/or purchase order.

Our proposal may include the receipt and interfacing to our system of items that will be supplied and/or specified by the customer. All shipping and receiving costs are to be paid by the customer. Items received C.O.D. will be added as a purchased item. We assume these items are 100 percent correct for our system. We reserve the right to, with or without prior notice, add to the Purchase Order issued for our system any and all costs incurred by us as a result of these customer supplied and/or specified items not being 100 percent correct and thus unable to perform in harmony with our system, regardless of the reasons for the inability. These charges will be added to the Apex hourly rate, by department, current at the date of invoicing. All items purchased to correct disharmony will be invoiced at acquired delivered cost plus 25 percent, rounded off to the nearest $5.00.

**apex machine company**

3000 n.e. 12th terrace • fort lauderdale, fl 33334-4497 usa
phone: 954.566.1572 • fax: 954.563.2844 • email@apexmachine.com
website: www.apexmachine.com

RITTER GMBH  
Kaufbeurer Strasse 55  
Schwabmunchen, D-86830  
Germany  

December 6, 2004  
Page 3 of 5

C-506/C, Quote No. 5474A

## C-506/C Pricing

Standard C-506/C as Described Above including:       S/N 104948

- Six Up Carriage / Color Capabilities
- Six Cartridge Style 9000 Series Print Heads
- No. 1 Ultraviolet Dryer
- Clear Coat Station
- No. 2 Ultraviolet Dryer
- One Set of Eight Mandrels / Tooling
- 4 PICS Units (Pneumatic Ink Capsule Systems)
- Two Ink Fountains
- Electrical Controls
- Intelligent Display / Production Monitor
- Vision Plate Mounting Unit
- ~~Ocean Freight and Insurance to Customer's Facility~~
- ~~Installation and Training – 2 to 3 Weeks~~        #109949

High Speed Quick Change Features:

- Six Spare Segmented Drum Assemblies
- Six Spare Roller Cartridge Assemblies
- Two Spare Ink Fountains
- Four Spare PICS Units

#109950

Miscellaneous Items

- Spare Parts                                      9350.00
- Imperial Nuts & Bolts Kit                         250.00
- 2 Gallons of Clear Coat – 60 Day Supply    225. ea.    450.00

#109951



**apex machine company**

3000 n.e. 12th terrace · fort lauderdale, fl 33334-4497 usa  
phone: 954.566.1572 · fax: 954.563.2844 · email@apexmachine.com  
website: www.apexmachine.com

RITTER GMBH  
Kaufbeurer Strasse 55  
Schwabmunchen, D-86830  
Germany

December 6, 2004  
Page 4 of 5

C-506/C, Quote No. 5474A

- 20 1/3 Pound Cartridges of Miscellaneous Color Inks – 60 Day Supply     27 ea  $ 540 –
  (9 process colors)
- Ink Management System for Color Quality     $ — 0 —
- Capex Start Up Kit     $ 595.00
- Tapex T10-CE Plate Making System   #104952     $ 6500.
- 2000 Sheets T8-M Photopolymer Plate Making Material     $ 18,000.
- Automatic Cartridge Cleaning System
- Export Shipping Container
- Hoppmann / Service Engineering Bowl Feed
- Export Shipping Crate for Feeding System     $ 464,315.00

Complete C-506/C as Described Above     US$ 500,000.00

**Apex Guarantee**

- Plate segments with pre-mounted plates changes can be made within two to three minutes
- Roller cartridge assemblies within the C-506/C can be removed and replaced with clean cartridge assemblies within one to two minutes each.

## apex machine company

3000 n.e. 12th terrace · fort lauderdale, fl 33334-4497 usa  
phone: 954.566.1572 · fax: 954.563.2844 · email@apexmachine.com  
website: www.apexmachine.com

**apex machine company**
3000 ne 12th terrace
ft. Lauderdale, fl 33334 usa

# Sales Order 104948

Customer 1883

**Bill To:**

RITTER GMBH
KAUFBEURER STRASSE 55
SCHWABMUNCHEN, D-86830
GERMANY

**Ship To:**

RITTER GMBH
KAUFBEURER STRASSE 55
SCHWABMUNCHEN, D-86830
GERMANY

| Date | Ship Via | F.O.B. | | Terms | |
|---|---|---|---|---|---|
| 12/06/04 | OCEAN FRT | ORIGIN | | CASH IN ADVANCE | |
| Purchase Order Number | | Order Date | Salesperson | Our Order Number | |
| RALF RITTER | | 12/06/04 | | | |

| Quantity | | | Item Number | Description | Tax | Unit Price | Amount |
|---|---|---|---|---|---|---|---|
| Req. | Ship | B.O. | | | | | |
| 1 | 0 | | MACHINE | *Caulking Tube Prtr* STANDARD C-506/C AS PER QUOTE 5474A DATED DEC. 6, 2004 | N | 464315.00 | 464315.00 |
| 1 | 0 | | COMPONENT | SIX-UP CARRIAGE/COLOR CAPABILITIES | N | 0.00 | 0.00 |
| 6 | 0 | | COMPONENT | CARTRIDGE STYLE 9000 SERIES PRINT HEADS | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | NO. 1 ULTRAVIOLET DRYER | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | CLEAR COAT STATION- | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | NO. 2 ULTRAVIOLET DRYER | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | SET OF 8 MANDRELS/TOOLING | N | 0.00 | 0.00 |
| 4 | 0 | | COMPONENT | PICS UNITS | N | 0.00 | 0.00 |
| 2 | 0 | | COMPONENT | INK FOUNTAINS | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | ELECTRICAL CONTROLS | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | INTELLIGENT DISPLAY/PRODUCTION MONITOR | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | VISION PLATE MOUNTING UNIT | N | 0.00 | 0.00 |
| 6 | 0 | | COMPONENT | SPARE SEGMENTED DRUM ASSEMBLIES | N | 0.00 | 0.00 |
| 6 | 0 | | COMPONENT | SPARE ROLLER CARTRIDGE ASSEMBLIES | N | 0.00 | 0.00 |
| 2 | 0 | | COMPONENT | SPARE INK FOUNTAINS | N | 0.00 | 0.00 |
| 4 | 0 | | COMPONENT | SPARE PICS UNITS | N | 0.00 | 0.00 |

*Ref see:*
*96252 6 clr Caulking tube*

(Continued) *Rec'd Eng 12/14/04*    Duplicate                Page 1

**apex machine company**
3000 ne 12th terrace
ft. Lauderdale, fl 33334 usa

# Sales Order

**Customer  1883**

**Bill To:**

RITTER GMBH
KAUFBEURER STRASSE 55
SCHWABMUNCHEN, D-86830
GERMANY

**Ship To:**

RITTER GMBH
KAUFBEURER STRASSE 55
SCHWABMUNCHEN, D-86830
GERMANY

| Date | Ship Via | F.O.B. | Terms |
|---|---|---|---|
| 12/06/04 | OCEAN FRT | ORIGIN | CASH IN ADVANCE |

| Purchase Order Number | Order Date | Salesperson | Our Order Number |
|---|---|---|---|
| RALF RITTER | 12/06/04 | | |

| Quantity Req. | Ship | B.O. | Item Number | Description | Tax | Unit Price | Amount |
|---|---|---|---|---|---|---|---|
| 1 | 0 | | COMPONENT | AUTOMATIC CARTRIDGE CLEANING SYSTEM | N | 0.00 | 0.00 |
| 1 | 0 | | COMPONENT | HOPPMAN/SERVICE ENGINEERING - BOWL FEED | N | 0.00 | 0.00 |
| 1 | 0 | | CRATE | SHIPPING CRATE FOR MACHINE | N | 0.00 | 0.00 |
| 1 | 0 | | CRATE | SHIPPING CRATE FOR FEEDING SYSTEM | N | 0.00 | 0.00 |
| 1 | 0 | | SHIP-INT | OCEAN SHIPPING CHARGES INCURRED UPON MACHINE SHIPMENT | N | 0.00 | 0.00 |

| | |
|---|---|
| Nontaxable Subtotal | 464315.00 |
| Taxable Subtotal | 0.00 |
| Tax | 0.00 |
| Total Order | 464315.00 |

Duplicate

Page   2



## Faxmessage

| To | Mr. Bob Coningsby | From | Ralf Ritter |
|---|---|---|---|
| Company | Apex Machine Company | Company | Ritter GmbH Geschäftsleitung |
| City | Fort Lauderdale, FL 33334 USA | City | 86830 Schwabmünchen |
| Street | 3000 N.E. 12th Terrace | Street | Kaufbeurer Straße 55 |
| Telephone | 001-954-565-2739 | Telephone | +49 (0)8232 5003-35 |
| Fax-No. | 001-954-563-2844 | Fax-No. | +49 (0)8232 5003-935 |
| Date | 16.12.2004 11:44 | Pages | 2 (This including) |

Your quotation No.5474A for C-506/C caulking tube printer (incl. required changes)

Dear Mrs. Wilson, Dear Bob,

Enclosed, pls find copy of Quote No. 5474 dd 02.12.04 as order confirmation signed and accepted by the undersigned.

Pls, let us have original contract via Fedex in due course signed by your side.

Furthermore, pls, be informed that we have effected deposit of US-$ 150.000,-- during today.

Best Regards

i.A. C. Feller

Ralf Ritter
Ritter GmbH

16/12 2004 11:54 FAX 498232500370   Ritter GmbH Gesch.Ltg.   ☒002/002

RITTER GMBH
Kaufbeurer Strasse 55
Schwabmunchen, D-86830
Germany

December 3, 2004
Page 5 of 5

C-506 & C-506/C, Quote No. 5474

Estimated Completion Date:   June 30, 2005

Installation & Instruction:   Included in Machine Pricing

Terms:
| | |
|---|---|
| US$ 150,000.00 | Deposit with Order Confirmation |
| US$ 50,000.00 | Due January 31, 2005 |
| US$ 50,000.00 | Due February 28, 2005 |
| US$ 50,000.00 | Due March 31, 2005 |
| US$ 50,000.00 | Due April 30, 2005 |
| US$ 50,000.00 | Due May 31, 2005 |
| US$ 50,000.00 | Due June 30, 2005 |
| US$ 50,000.00 | Final Payment Due 30 Days After Shipment |

Bank Information:   Wachovia Bank
Jacksonville, Florida
ABA # 063000021
Apex Machine Company   A/C # 20000 1485 7496

ACCEPTED BY 16.12.04 2004

By _____

Respectfully submitted,

APEX MACHINE COMPANY

By _____
A. Robert Coningsby, III
Vice President Sales & Marketing



## apex machine company

3000 n.e. 12th terrace · fort lauderdale, fl 33334-4497 usa
phone: 954.566.1572 · fax: 954.563.2844 · email@apexmachine.com
website: www.apexmachine.com

%JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
APEX MACHINE COMPANY

### DEFENDANTS
RITTER GMBH

**(b)** County of Residence of First Listed Plaintiff: BROWARD
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert C. Meacham, Esq.
MAY MEACHAM & DAVELL, P.A.
One Financial Plaza, Suite 2602
Ft. Lauderdale, FL 33394

Attorneys (If Known)

*Stamps:* MAGISTRATE JUDGE SNOW / CIV-COHN 06-60689

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

0:06 CV 60689-Cohn

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | **PRISONER PETITIONS** | | |
| | | ☐ 510 Motions to Vacate Sentence | | |
| | | **Habeas Corpus:** | | |
| | | ☐ 530 General | | |
| | | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

**TORTS - PERSONAL INJURY:** ☐ 362 Personal Injury - Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability. **PERSONAL PROPERTY:** ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability.

### V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO
b) Related Cases ☐ YES ☐ NO
JUDGE _____  DOCKET NUMBER _____

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Breach of Contract Pursuant to 672.709 and 672.708 Florida Statutes

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*
DATE: 5/16/06

FOR OFFICE USE ONLY
AMOUNT 350.00   RECEIPT # 537133